IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:23-cr-00289 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| LORENZO D. TAYLOR, | |
| Defendant. | MEMORANDUM OPINION & ORDER |

This matter is before the Court on Defendant Lorenzo D. Taylor's ("Taylor") Motion to Dismiss Indictment filed on July 31, 2023 ("Defendant's Motion"). (Doc. No. 19.) On August 3, 2023, the United States of America ("the Government") filed a Response. (Doc. No. 23.) On August 21, 2023, Taylor filed a Reply. (Doc. No. 25.)

For the following reasons, the Court DENIES Taylor's Motion to Dismiss.

**I.      Background and Arguments**

On June 1, 2023, a grand jury charged Taylor with a single count of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (Doc. No. 1.) The indictment identified Taylor's prior criminal convictions punishable by more than a year in prison as (1) Having Weapons Under Disability and Drug Trafficking on September 7, 2021, and (2) Aggravated Robbery on June 25, 2012. (*Id.*)

On July 31, 2023, Taylor filed the instant Motion to Dismiss Indictment. (Doc. No. 19.) In short, he argues that § 922(g)(1) is "inconsistent with this Nation's historical tradition of firearm regulation" and is thus unconstitutional. (Doc. No. 19, p. 7.) On August 3, 2023, the Government filed its Response. (Doc. No. 23.) The Government contends that (1) *New York State Rifle & Pistol*

*Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), did not call into question prior Sixth Circuit precedent that relied on *District of Columbia v. Heller*, 554 U.S. 570 (2008), and held that § 922(g)(1) is constitutional, (2) the Second Amendment's text and Founding-era history support § 922(g)(1)'s constitutionality, and (3) § 922(g)(1) is at least constitutional as applied to Taylor because of his violent criminal history. (*Id.* at p. 5.) On August 21, 2023, Taylor filed a Reply in which he argues that the *Bruen* majority opinion abrogated "[w]hatever force the *Heller* dicta may have had at one point" in the Sixth Circuit. (Doc. No. 25, p. 5.)

On August 25, 2023, Taylor's counsel filed a Motion to Withdraw, citing a conflict of interest. (Doc. No. 26.) He also requested that the Court hold Taylor's Motion to Dismiss in abeyance until new counsel is appointed. (*Id.*) On August 28, 2023, the Court granted Taylor's counsel's Motion and appointed Taylor new counsel. (Non-Document Order dated August 28, 2023.) On August 30, 2023, the Court issued a non-document Order requiring Taylor's newly appointed counsel to notify the Court either of his decision to stand on Defendant's Motion as filed and request a ruling on it, or of any intention to supplement Defendant's Motion. On September 12, 2023, Taylor's counsel notified the Court via email that Taylor will stand on Defendant's Motion as filed and that he requests that the Court rule on it.

## II.     Legal Standard

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant can move to dismiss an indictment for failing to state an offense. "[A]t this stage of the proceedings, the indictment must be tested by its sufficiency to charge an offense." *United States v. Sampson*, 371 U.S. 75, 78-79 (1962). And the Court must take "the allegations of the indictment . . . as true." *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952).

**III. Law and Analysis**

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *Heller*, the Supreme Court held that the Second Amendment protects an individual's right to keep and bear arms regardless of militia service. 554 U.S. at 595, 598-99. Moreover, it held that the pre-existing, core right that the Second Amendment codified is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. Importantly, however, it also cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626.

"Relying on [this] language from *Heller*, [the Sixth Circuit] has held that § 922(g)(1) comports with the Second Amendment, stating that 'prohibitions on felon possession of firearms do not violate the Second Amendment,' and 'Congress's prohibition on felon possession of firearms is constitutional.'" *United States v. Whisnant*, 391 F. App'x 426, 430 (6th Cir. 2010) (quoting *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010)).

After *Heller*, the Sixth Circuit adopted the following two-prong approach to resolve Second Amendment challenges:

> Under the first prong, the court asks whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood. . . . If the Government demonstrates that the challenged statute regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment—1791 [Bill of Rights ratification] or 1868 [Fourteenth Amendment ratification]—then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review.
>
> If the government cannot establish this—if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected—then there must be a second inquiry into the strength of the government's justification for restricting

3

or regulating the exercise of Second Amendment rights. Under this prong, the court applies the appropriate level of scrutiny. If the law satisfies the applicable standard, it is constitutional. If it does not, it is invalid.

*United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012) (internal quotations and citations omitted).

In *Bruen*, the Supreme Court held that this two-prong approach is "one [prong] too many." 142 S. Ct. at 2126. "Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.*

Taylor argues that *Bruen* abrogated *Heller's* dicta that "longstanding prohibitions on the possession of firearms by felons" remain presumptively lawful. *Heller*, 554 U.S. at 626. But the majority in *Bruen* reassured that the right to bear arms is still "subject to certain reasonable, well-defined restrictions." 142 S. Ct. at 2156 (citing *Heller*, 554 U.S. at 581); *see also id.* at 2157 (Alito, J., concurring); *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.); *id.* at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.).

The Eighth Circuit recently concluded that "[g]iven these assurances by the Supreme Court, and the history that supports them, . . . there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023). This Court finds the Eighth Circuit's reasoning persuasive.

After citing the Supreme Court's assurances, the Eighth Circuit examined the history of firearm restrictions. England in the late 1600s disarmed non-Anglican Protestants and, later, Catholics who refused to renounce their faith. *Id.* Colonial America prohibited Native Americans from owning firearms and disarmed religious minorities, such as Catholics. *Id.* at 502-03. During the Revolutionary War, the Continental Congress and several colonies prohibited people who refused to declare an oath of loyalty from possessing firearms. *Id.* at 503. After the war, some state

4

legislatures disarmed people for non-violent hunting offenses. *Id.* The court concluded from this historical record that:

> [L]egislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons.

*Id.* at 505.

In *Range v. AG United States*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc), the Third Circuit found § 922(g)(1) unconstitutional. The court cautioned, however, that its decision was "a narrow one" because the defendant challenged § 922(g)(1) only as applied to him and based on his individual circumstances. *Id.* In 1995, the defendant plead guilty to making a false statement to obtain food stamps. *Id.* at 98. The defendant's conviction was a misdemeanor but punishable by up to five years' imprisonment. *Id.* He twice tried to buy a hunting rifle—once in 1998 and a second time "years later." *Id.* at 98-99. He was rejected both times. *Id.* After learning his 1995 conviction barred him from purchasing a rifle, he sued the Government, alleging that § 922(g)(1) violated the Second Amendment as applied to him. *Id.* at 99.

The Third Circuit agreed, in part because of the nonviolent nature of the defendant's prior conviction. *Id.* at 105; *see also id.* at 110 (Ambro, J., concurring, joined by Greenaway, Jr. and Montgomery-Reeves, JJ.) ("I join the majority opinion with the understanding that it speaks only to [the defendant's] situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like.").

Taylor's circumstances are distinguishable. He has prior criminal convictions for aggravated robbery in 2012 and having weapons under disability and drug trafficking in 2021. (Doc. No. 1.)

While the Court is not privy to the specifics of Taylor's convictions, none can be fairly characterized as nonviolent or otherwise analogous to making a false statement to obtain food stamps. *See, e.g., United States v. Jordan*, 2023 U.S. Dist. LEXIS 112765 at *6-7 (N.D. Ohio June 29, 2023) (Adams, J.) (rejecting contention that defendant's aggravated robbery, drug possession, escape, drug trafficking, and possessing a weapon while under disability convictions were not "dangerous" enough to prohibit him from possessing a firearm); *c.f. United States v. Wright*, 2023 U.S. App. LEXIS 20218 at *19 (6th Cir. Aug. 4, 2023) (concluding that "firearm-related offenses [shooting someone] in combination with drug trafficking are fairly characterized as 'dangerous' or 'violent'" under substantive reasonableness review).

Accordingly, § 922(g)(1) does not violate the Second Amendment, particularly as applied to Taylor.  The Court therefore denies Taylor's Motion to Dismiss.

**IV.  Conclusion**

For the reasons set forth above, the Court denies Taylor's Motion to Dismiss Indictment.

**IT IS SO ORDERED.**

Date: September 12, 2023

  s/Pamela A. Barker
PAMELA A. BARKER
U. S. DISTRICT JUDGE